**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**SPECTRUM MID-AMERICA, LLC,**

**Plaintiff,**

**v.**

**CINCINNATI BELL TELEPHONE COMPANY, LLC, et al.,**

**Defendants.**

**Case No. 1:24-cv-423**

**JUDGE DOUGLAS R. COLE**

**OPINION AND ORDER**

Plaintiff Spectrum Mid-America, LLC, maintains cable lines throughout Ohio and Kentucky. Defendants Cincinnati Bell Telephone Company, LLC, and their sub-contractors allegedly damaged Spectrum's cable lines at a number of properties when installing or servicing their own lines. So Spectrum sued to recover the cost of that damage. Over the past two years, Spectrum has settled with all defendants except for two: Frost Line Utility Services and B&M Underground, LLC. Those defendants have yet to appear. Accordingly, Spectrum sought and received entries of default from the Clerk's Office. It now moves the Court for default judgment against both defendants. That request fails, though, for different reasons as to each defendant. First, Spectrum failed to properly serve Frost Line, meaning that Frost Line's time to respond has not even started, let alone lapsed. Second, while Spectrum properly served B&M Underground, Spectrum has failed to state a plausible claim for relief against it. Accordingly, for the reasons explained briefly below, the Court **DENIES** Spectrum's Motion for Default Judgment (Doc. 54).

## BACKGROUND[1]

The allegations in this case are straightforward. Spectrum is a large internet, phone, and television provider.[2] As part of its business, Spectrum operates cable lines throughout Ohio and Kentucky. (*See* Compl., Doc. 1, #4–9). Unfortunately for Spectrum, other companies occasionally damage those cable lines in the course of installing or servicing their own cable lines. Here, Spectrum alleges that Defendants Cincinnati Bell, Inc. and/or Cincinnati Bell Telephone Company, LLC (collectively Cincinnati Bell), doing business as Altafiber, hired eight subcontractors to install and service Cincinnati Bell's cable lines. (*Id.* at #3–4). And Spectrum points to nineteen occasions, at various addresses, where those subcontractors allegedly damaged its lines, causing several thousand dollars of damage each time. (*Id.* at #4–9). So on August 9, 2024, Spectrum sued Cincinnati Bell and its subcontractors and asserted claims of negligence and trespass to chattel. (*Id.*).

While this case technically has been ongoing for two years, little has actually happened. At this point, all defendants except for two have been dismissed after settling with Spectrum. (9/3/25 Not. Order; 11/25/25 Not. Order; 4/28/26 Not. Order; 7/16/26 Not. Order). The two remaining defendants are Frost Line and B&M Underground.

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021). Accordingly, the Court's summary of the factual background rests on the allegations in Plaintiff's Complaint (Doc. 1).

[2] https://www.spectrum.com/.

The Clerk's Office issued summons for Frost Line by certified mail, (Doc. 11, #57), and reported it was returned executed, (Doc. 20). The certified mail receipt, however, was not signed or dated. (*See id.*). The only piece potentially substantiating service is an attached USPS tracking receipt that states an "item was delivered to an individual at" Frost Line's address. (Doc. 20-1, #111). For B&M Underground, the Clerk's Office initially issued a summons, (Doc. 11, #59), but then had to reissue it two months later, (Doc. 36). While the summons initially was returned unexecuted, (Doc. 38), on January 17, 2025, it was returned executed, (Doc. 42). Neither defendant ever answered or otherwise appeared.

Eight months later, on September 18, 2025, the Court ordered Spectrum to either move for an entry of default against Frost Line and B&M Underground or face dismissal of those defendants for failure to prosecute. (Doc. 45). Spectrum attempted to comply and filed a Motion for Default Judgment (Doc. 46). The Court, however, denied that motion because Spectrum had not yet sought an entry of default from the Clerk's Office. (4/6/26 Not. Order). Heeding the Court's directions, three weeks later, Spectrum applied for default, (Doc. 49), which the Clerk granted, (Doc. 52). Two weeks later, Spectrum filed the instant Motion for Default Judgment (Doc. 54). Over three months have passed, with still no appearance from either defendant.

With that, the matter is ripe for the Court's review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show,

"by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* At that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver*, 2021 WL 1084610, at *2; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants." (citation omitted)). Stated differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (citation omitted).

Assuming the court has jurisdiction and the plaintiff has presented a plausible claim, the court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (citation omitted). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

Spectrum seeks a default judgment against two defendants. But its request fails as to both. First, Spectrum has not properly served Frost Line, so Frost Line's time to respond has not lapsed. Separately, while Spectrum properly served B&M Underground, it failed to allege viable claims for negligence or trespass to chattel against it. Ultimately, then, the Court concludes that Spectrum is not entitled to default judgment against either defendant.

### A. Spectrum Failed to Properly Serve Frost Line.

The Court starts with the attempted service on Frost Line. The Clerk's Office issued a summons for Frost Line on October 7, 2024, (Doc. 11, #57), and sent that summons to Frost Line by certified mail on October 8, 2024, (Doc. 13). The docket further states that, on October 18, 2024, the summons was returned executed by Frost Line, and a separate summons was returned executed by CTS Construction. (*See* Doc. 20). That sounds good. But, in reviewing the underlying documents, no one signed the certified mail receipt for Frost Line. (*See id.*). Only CTS Construction's

certified mail receipt was signed. (*Id.*). Alongside the receipts, the Clerk's Office also filed the USPS tracking receipt. (Doc. 20-1). But that tracking document only states that an "item was delivered to an individual" at Frost Line's address. (*Id.* at #111). It does not include a signature for that individual. (*See id.*). That is not effective service.

To perfect service on a defendant, a plaintiff must comply with Federal Rule of Civil Procedure 4. That Rule provides that service can be accomplished by: (1) "delivering a copy of the summons and of the complaint to the individual personally"; (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(A)–(C). Alternatively, service can also be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1).

Here, there is no suggestion that Spectrum pursued any of the former three methods. Rather, it elected to seek service through certified mail, which Ohio law allows, and which this Court thus also allows, *see* Fed. R. Civ. P. 4(e)(1), so long as such service is accomplished in accordance with the procedures set forth in S.D. Ohio Local Rule 4.2. But Rule 4(e)(1) also requires such service be done in conformance with state law, and under Ohio law service by certified mail must be "[e]videnced by return receipt signed by any person." Ohio Civ. R. 4.1(A)(1)(a). So, while the USPS tracking receipt establishes an *attempt* at certified mail, it does not include any

signature, and thus does not substantiate that service occurred. *See Galloro v. SAR Hosp., LLC*, 2025-Ohio-2751, ¶¶ 14, 29 (6th Dist.) (finding attempted service did not satisfy Ohio Civil Rule 4.1(A)(1) because USPS tracking receipt was not a signed return receipt). In short, Spectrum has not validly served Frost Line.

That failure of service creates a problem for Spectrum's pending request for default judgment. Under Federal Rule of Civil Procedure 55(a), the Clerk of Court can enter a default only when a party fails to plead or otherwise defend as required by Rule 12(a)(1)(A). *See, e.g.*, *Thomas v. Quantum Cmty. Dev. Corp.*, No. 16-11954, 2016 WL 9403991, at *1 (E.D. Mich. July 13, 2016). But that rule gives a party "21 days *after being served* with the summons and complaint" to so plead or defend. Fed. R. Civ. P. 12(a)(1)(A)(i) (emphasis added). So, if service was deficient, the 21-day clock does not begin to run. *See O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003) ("[I]f service of process was not proper, the court must set aside an entry of default."). In other words, until a defendant is properly served, the Court cannot penalize them for declining to appear and defend.

That said, the Court acknowledges it played a role in this error. In its September 18, 2025, Order, the Court stated that "Spectrum effectuated service on Defendants via waiver or summons," including Frost Line, and that Frost Line's deadline to answer had passed. (Doc. 45, #183). Upon further review, though, it appears the Court was in error. But, given the Court's oversight, it will grant Spectrum a second bite at the service apple, should Spectrum wish (although if it

serves Frost Line, it should also remain mindful of the types of pleading defects the Court highlights as to B&M Underground below, *see* Part C).

## B. The Court Has Jurisdiction over B&M Underground Though.

Things look better, at least on the jurisdictional front, as to B&M Underground. Begin with subject matter jurisdiction. The Court possesses diversity jurisdiction because (1) Spectrum is incorporated in Delaware and has its principal place of business in Missouri, making it a citizen of those two states, (2) B&M Underground is a citizen of Ohio,[3] and (3) the amount Spectrum sought jointly from the general contractor (Cincinnati Bell) and the smaller subcontractors exceeded $75,000, (Doc. 1, #3–4, 9); *see* 28 U.S.C. § 1332(a), meaning that, with the jurisdictional threshold met through the total claim against the general contractor, Spectrum could add the smaller individual claims against the subcontractors through supplemental jurisdiction, *see* 28 U.S.C. § 1367.[4]

---

[3] Diversity jurisdiction requires complete diversity where the plaintiff is not a citizen of the same state as any defendant. *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2000) (citing 28 U.S.C. § 1332(a)). While this default judgment motion only involves Frost Line and B&M Underground, none of the other Defendants are a citizen of either Delaware or Missouri. (*See* Doc. 1, #3–4).

[4] True, the general contractor has now settled, so one could argue the Court should dismiss the remaining claims for lack of jurisdiction. So long as the Court had jurisdiction over the small state law claims at the outset, though, it can continue to exercise that jurisdiction even once the larger claim has settled. *See Goldberg & Assocs., PC v. Baydoun*, No. 22-11277, 2026 WL 1356433, at *6 (E.D. Mich. May 15, 2026) (explaining that settlement of some defendants does not affect the amount in controversy for the remaining ones); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Here, in the interest of judicial efficiency, the Court elects to handle the claims as to the two remaining defendants.

Then turn to personal jurisdiction. The Court also finds, based on the allegations in the complaint, that it has personal jurisdiction over B&M Underground. Because B&M Underground has its principal place of business in Ohio, this Court can exercise general personal jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradigm bases for general jurisdiction.'" (cleaned up) (quotation omitted)).[5]

### C. Spectrum Does Not Allege All Material Elements of its Negligence or Trespass to Chattel Claims.

But that is not the end of the story. To obtain a default judgment, Spectrum must also present at least one facially valid claim. That is, the complaint must include a claim that would survive a Rule 12(b)(6) motion to dismiss. *Buxton*, 2023 WL 4861724, at *6 ("For a default judgment to be proper, 'the complaint must be able to survive a Rule 12(b)(6) motion to dismiss.'" (quotation omitted)). And on that front, pure legal conclusions or "formulaic recitation[s] of the elements of a cause of action" do not count. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, Spectrum's complaint includes both negligence and trespass to chattel claims against B&M Underground. (Doc. 1, #4, 8–9). But the problem is that Spectrum has failed to adequately plead either.

[5] If Frost Line had been properly served, the Court would likely enjoy jurisdiction over it as well. Spectrum alleges that Frost Line "is an Ohio corporation with its principal place of business in Clarksville, Ohio, doing business in the State of Ohio." (Doc. 1, #4). So Frost Line is also diverse from Spectrum for subject-matter-jurisdiction purposes, and the Court enjoys general personal jurisdiction over it.

Start with the negligence claim. To prevail on a negligence claim under Ohio law, a plaintiff must establish "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and the injury, and (4) damages." *Wheatley v. Marietta Coll.*, 48 N.E.3d 587, 605 (Ohio Ct. App. 2016) (quotation omitted).

In Spectrum's complaint, though, it offers only one allegation specific to B&M Underground:

> On or about November 14, 2022 at the request of, and under contract or retention with Altafiber, Defendant B&M Underground, LLC while performing services on behalf of Altafiber, damaged the cable line and property of Plaintiff herein, at 9907 McCauly Woods Drive, Cincinnati, Ohio, 45241 causing damages in the amount of at least $7,065.70.

(Doc. 1, #8). Like all the other subcontractors, those services were "to perform and install underground cable services." (*Id.* at #4). In terms of a duty or breach, all Spectrum offers is the conclusory allegation that "[a]ll of the above Defendants owed a foreseeable duty to Plaintiff, not to damage and/or destroy Plaintiff's property and underground cable. All of the above Defendants negligently breached their foreseeable legal duty." (*Id.* at #9).

These allegations likely suffice as to the third and fourth negligence elements; B&M Underground allegedly caused the injury while installing or servicing cable lines of its own and that allegedly caused $7,065.70 in damage. But its allegations as to duty and breach are exactly the kind of "formulaic recitation[s]" that the Supreme

Court has instructed courts to ignore. *Ashcroft*, 556 U.S. at 678.[6] Even if the Court could assume that Defendants owed a duty to exercise reasonable care of some kind, Spectrum has failed to allege how Defendants acted unreasonably and breached that duty. So that claim fails.

Now turn to the claim for trespass to chattel. Ohio caselaw discussing this kind of claim is "extremely meager," but "it is an actionable tort and courts applying Ohio law have turned to the Restatement (Second) of Torts for guidance." *Mercer v. Halmbacher*, 44 N.E.3d 1011, 1017 (Ohio Ct. App. 2015) (collecting cases). "According to the Second Restatement, a trespass to a chattel may be committed by intentionally: (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* (quoting Restatement (Second) of Torts § 217 (Am. L. Inst. 1965)). And according to the Restatement's comments, to satisfy the intent requirement, the act at issue must be "done for the purpose of using or otherwise intermeddling with a chattel [of another] or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." Restatement (Second) of Torts § 217 cmt. c (Am. L. Inst. 1965). If that is shown, the defendant will be liable if "the chattel is impaired as to its condition, quality, or value" or "harm is caused to some person or thing in which the possessor has a legally protected

[6] Even if Spectrum had properly served Frost Line, Spectrum makes the same allegations against that defendant, only with a different address and value of damages. (See Doc. 1, #7–8). So the request for default judgment against Frost Line on the negligence claim fails for this reason, too.

interest." *Mercer*, 44 N.E.3d at 1017 (quoting Restatement (Second) of Torts § 218 (Am. L. Inst. 1965)).

Again, Spectrum clearly alleges its cable lines were damaged and so "impaired as to [their] condition." *Id.* But Spectrum offers no factual allegations suggesting that B&M Underground *intentionally* damaged its lines. Indeed, asserting that B&M Underground acted with that intent is somewhat at odds with Spectrum's negligence claim. But the bottom line is that intent is a necessary element, and Spectrum has not alleged it.[7] So the Court cannot grant default judgment on that claim either.

**CONCLUSION**

For the reasons discussed above, the Court **DENIES** Plaintiff Spectrum Mid-America, LLC's, Motion for Default Judgment (Doc. 54), but the denial is **WITHOUT PREJUDICE**. If Spectrum wishes to obtain a judgment, it must (1) perfect service against Defendant Frost Line Utility Services, and (2) present sufficient evidence to establish each element of its claims against both remaining defendants.

**SO ORDERED.**



August 20, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

[7] The same shortcoming exists as to Frost Line.